UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


RICHARD SCHMIDT,          )     CASE NO:  16-03237
                      )     ADVERSARY
         Plaintiff,    )
                      )      Houston, Texas
    vs.               )
                      )   Thursday, November 3, 2016
PLATINUM PARTNERS VALUE    )
ARBITRAGE FUND LP, ET AL,  )   (3:00 p.m. to 3:57 p.m.)
                      )
         Defendants.   )


DISCOVERY / EVIDENTIARY HEARING

BEFORE THE HONORABLE MARVIN ISGUR,
UNITED STATES BANKRUPTCY JUDGE




Appearances:          See page 2

Court Recorder:      Oliver L.

Transcribed by:      Exceptional Reporting Services, Inc.
                    P.O. Box 18668
                    Corpus Christi, TX 78480-8668
                    361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>APPEARANCES FOR:</u>


Plaintiff:                    CRAIG SMYSER, JR., ESQ.
                              JUSTIN M. WAGGONER, ESQ.
                              Smyser Kaplan, et al.
                              700 Louisiana, Suite 2300
                              Houston, TX 77002


Defendants:                   CHRISTOPHER D. LINDSTROM, ESQ.
                              Cooper Scully
                              815 Walker St., Suite 1040
                              Houston, TX 77002

                              WARREN E. GLUCK, ESQ. (via phone)
                              Holland & Knight
                              31 West 52nd St.
                              New York, NY 10019

1       **Houston, Texas; Thursday, November 3, 2016; 3:00 p.m.**

2              **(Mr. Gluck appeared telephonically)**

3                      **(Call to Order)**

4          **THE COURT:**  All right.  We're here in Schmidt versus

5   Platinum Partners Value Arbitrage Fund, 16-3237.  Let's go

6   ahead and take appearances if we could please.

7          **MR. SMYSER:**  Craig Smyser and Justin Waggoner on

8   behalf of Richard Schmidt, the trustee.

9          **THE COURT:**  Thank you, Mr. Smyser.

10         **MR. LINDSTROM:**  Good afternoon, your Honor.  Chris

11  Lindstrom, L-i-n-d-s-t-r-o-m, for Platinum Partners Credit

12  Opportunities and Platinum Partners Liquid Opportunities.

13         **THE COURT:**  Good afternoon, Mr. Lindstrom.

14         Anyone that wishes to appear on the phone may press

15  five star.

16         Ms. Parland (phonetic)?

17     **(No audible response)**

18         **MR. GLUCK:**  Thank you, your Honor.  Warren Gluck,

19  Holland and Knight, counsel for the liquidators of Platinum

20  Partners Value Arbitrage Fund, LP.

21         **THE COURT:**  Thank you, Mr. Gluck.

22         All right.  What do we have?

23         **MR. SMYSER:**  Your Honor, we're here today on two

24  issues; one, we're here to follow up on the cash disbursement

25  issue and we're here on our request for an order for emergency

1    discovery.

2         With respect to the emergency discovery issue, we're

3    asking for an order to permit us to take depositions and other

4    discovery and for the court to permit us to issue subpoenas or

5    notices for witnesses to compel their attendance.  My

6    understanding in conversations with counsel for PPCO and PPLO,

7    if I may use the alphabet suit abbreviations, Mr. Lindstrom's

8    clients, is that the company has agreed that they will demand

9    appearance of the individuals but that they are not going to

10   represent the individuals.  And they are -- have agreed to give

11   me, as I understand it, the names of the lawyers who would

12   represent the individuals whose depositions we have requested.

13        With respect to documents --

14        **THE COURT:**  So, in essence, what you're asking me to

15   do is to just issue an order that says that expedited discovery

16   will take place.  You're authorized to take expedited discovery

17   but if those individuals have any defenses to that discovery

18   that their lawyers wish to assert, you're not asking me to in

19   any way deal with those now, those lawyers could bring those

20   forward at an appropriate time.

21        **MR. SMYSER:**  Yes, your Honor.

22        **THE COURT:**  Mr. Lindstrom, does that work for your

23   client?

24        **MR. LINDSTROM:**  No.  Just a small caveat to that,

25   your Honor.

1          PPCO and PPLO object to any discovery on an expedited

2    basis.  We don't believe the emergency motion has set forth the

3    standard for good cause.  The plaintiff filed a response but we

4    didn't get it till late yesterday and an emergency motion was

5    filed.  And my understanding of the district's rules, a written

6    response is not required in that short --

7          **THE COURT:**  I agree.  A written response isn't --

8          **MR. LINDSTROM:**  Essentially there are the documents

9    and the depositions.  On the documents, the first category is

10    essentially asking to show the various accounts where any of

11    this money that they got would have gone.  I don't dispute that

12    that's something that is going to be relevant in this case.  I

13    don't think it's relevant to the preliminary injunction.  And

14    then the second set of documents is just anything that PPCO

15    intends to rely on at the hearing.  Well, obviously the rules

16    are (indiscernible) for hearing we have to (indiscernible) any

17    exhibit (indiscernible) so we're not objecting to producing the

18    exhibits.

19          **THE COURT:**  What about the witnesses?

20          **MR. LINDSTROM:**  Well, the witnesses presents two sets

21    of problems.  The first problem which I discussed with Counsel

22    outside is, because we've been informed that the trustee

23    intends to bring a lawsuit against at least one of the three --

24    the three men who they're seeking to take a deposition of, and

25    presumably he's ended up suing the other two -- I haven't been

1    told that but my -- I'd be surprised if they also don't get

2    sued.  That puts my law firm, Cooper and Scully, in the

3    position of, we have a conflict in representing the company and

4    representing their employees if the employees are now being

5    sued for things that they -- that they did.  (indiscernible)

6    lawsuits and potentially also things that the debtor did not

7    relate to this particular lawsuit, which means there's

8    something else that they did wrong.  So Cooper and Scully

9    cannot present them for deposition.  We've advised all them

10   there's a conflict here, you need to get your own attorneys to

11   advise you on this.

12        **THE COURT:**  But the firm will direct its employees

13   that these are legitimate subpoenas.

14        **MR. LINDSTROM:**  Yes, your Honor, and that's the

15   distinction we're discussing is that we cannot present them but

16   if we are served a subpoena, then because these are PPCO

17   employees, the company is supposed to produce them.  Now, if

18   some of them objects to their outside counsel, then we'll cross

19   that bridge whenever we come to it.

20        **THE COURT:**  What about a 30(b)(6) deposition?

21        **MR. LINDSTROM:**  I don't think that was one of their

22   requests on there but presumably Cooper and Scully wouldn't

23   have any problem doing a 30(b)(6) deposition.

24        **THE COURT:**  Tell me why you need to know, solely for

25   a preliminary injunction point of view, into which account the

1    money went?  I mean, the injunction I issued was against all

2    their accounts so why would it matter into what account this

3    money went for the purpose of a preliminary injunction hearing?

4         MR. SMYSER:  Well, there have been allegations about

5    whether or not we can trace the money appropriately and whether

6    the court can -- in fact, you have issued a order that requires

7    them to segregate the money but as we know, as we found out in

8    the cash disbursement process, so far we haven't found that

9    they have the money.  And I am looking to find out whether or

10   not the injunction is properly covering accounts where the

11   money may be.  I understand from what I  --

12        THE COURT:  I thought it covered all accounts?

13        MR. SMYSER:  Well --

14        THE COURT:  Like every account in the world.

15        MR. SMYSER:  My understanding is that these funds

16   operate through subsidiaries and the subsidiaries have

17   individual investments in them.  There is a list of

18   subsidiaries as long as my arm and I want to find out if the

19   money is, in fact, sitting in some other account that is,

20   arguably, legally distinct from the accounts of the entity that

21   is, in fact, the owner of that subsidiary -- which is part of

22   the reason we used PPVA Black Elk (Equity).  And that entity is

23   a, as I understand it, a wholly owned subsidiary of PPVAF and

24   it is -- there may be other wholly owned subsidiaries of these

25   companies that we don't know that actually have the money now.

1  And I'm interested in finding out whether or not that's the

2  case.  And a list of accounts where the money has gone seems to

3  me to be very relevant to the issues in this case and the scope

4  of the injunction that we hope the court will issue.

5         It's also related to the question of our likelihood

6  to succeed on the merits if I can show how the money has been

7  used by the company and where it has gone.  It seems to me that

8  that shows further exercise of their dominion over the funds.

9         **THE COURT:**  Mr. Lindstrom, what's your answer to

10  that?

11         **MR. LINDSTROM:**  Just a very short, brief response,

12  your Honor.

13         There's no question that where the money went is

14  going to be relevant to the case.  As the court has pointed

15  out, it's frozen all the money.  So if the company is -- has

16  some account somewhere that they're not disclosing and they

17  squander the money away then they're going to have to deal with

18  the court on that point.

19         I'm not sure I agree with Mr. Smyser's position that

20  where -- the accounts that it went to is going to show any kind

21  of likelihood of success on the merits.  I think he has to show

22  the facts that are pled in his complaint, that these are not

23  necessarily all true but "this is where we stand with the

24  lawsuit and this is what we're going to show.  In the end it's

25  likely we're going to prove that the allegations are true

1    here".  So I'm not sure I follow him on that point.

2         **THE COURT:**  Well, hypothetically, let's assume he

3    wins on likelihood of success on the merits.  If he loses on

4    that, nothing else matters, right?

5         **MR. LINDSTROM:**  Right.

6         **THE COURT:**  But if he wins on likelihood of success

7    on the merits and as he says, the money has been transferred

8    from Account A to a subsidiary and it's held by the subsidiary,

9    how are we supposed to figure out the scope of the injunction

10   if that information isn't known?  So it isn't -- I think you

11   are correct that it's not relevant to whether an injunction

12   ought to be issued.  And it sounds to me like he is correct

13   that if one is issued, it's relevant to the scope of the

14   injunction.

15        **MR. LINDSTROM:**  Well, could we set it up where we had

16   the preliminary injunction hearing and then if he's successful

17   and then we're drafting an order on the scope, at that point we

18   could figure out, here is all the various accounts because my

19   understanding is it wouldn't be very difficult to get this.

20        **THE COURT:**  If you want to stipulate today that if

21   he's successful, it would bind Platinum and all of its

22   subsidiaries to not -- if he succeeds on proving likelihood of

23   success on the merits that you'll agree to a broad scope 10

24   days from now, subject to a narrowing hearing that could come

25   later, then that probably does resolve the issue but if it's

1  not going to start off broad then I think he's made a good

2  point.

3        MR. LINDSTROM:  Well, without knowing a full list of

4  all the clients' subsidiaries, all of this is (indiscernible)

5  because I haven't had a chance to look at all them yet.  I

6  can't bind them all today; that's something that certainly I

7  will look at though.

8        MR. SMYSER:  I will also add, your Honor, that I had

9  this discussion with Mr. Lindstrom outside and I informed him

10  of what his client had told me when they were unrepresented and

11  their client told me they could get this information very

12  easily and they had no problem giving it to me.  That was when

13  I was dealing with the in-house counsel and so --

14        THE COURT:  I appreciate that but things are moving

15  fast.

16        MR. SMYSER:  Okay.  Fair enough.

17        THE COURT:  Let me -- I'm going to give you an

18  option.

19        MR. LINDSTROM:  Okay.

20        THE COURT:  I'm going to let him take the discovery.

21  You can stipulate it away by agreeing that if he prevails on

22  likelihood of success, that an initial preliminary injunction

23  would apply to the company and all of its affiliates and

24  subsidiaries, anybody they're working in concert with at this

25  point.  I don't know that we would need all of that.  You will

1   eventually need it.  If you don't want to make that stipulation

2   -- which is just fine.  I, frankly, don't know that I would

3   make it if I were in your shoes.  At that point it all becomes

4   relevant and I'm going to let him have the discovery.

5         **MR. LINDSTROM:**  Well, that's what I need to discuss.

6   With the court's permission, if I can have 24 hours to discuss

7   that with the client.

8         **THE COURT:**  I'll put it in the order that within 24

9   hours you can either make the stipulation or I'm going to

10  require you to provide the discovery.  Your choice but you can

11  talk to them first.

12        **MR. LINDSTROM:**  Okay.  And my understanding is that

13  applies to the production of documents we're talking about.  On

14  the depositions, in addition to the issues that the firm has

15  and other issues.  PPCO also objects to it.  I don't think

16  there's any good cause to go take these depositions.  If the

17  trustee has enough evidence to file this preliminary injunction

18  against them, I don't think it's necessary to go get them to

19  help him prepare.

20        **THE COURT:**  All depends on whether you're going to

21  present a defense.

22        **MR. LINDSTROM:**  Well, that's true (laughs).

23        **THE COURT:**  (laughs) If you want to rely -- if you

24  don't plan to present any evidence then I may hold him to what

25  he already knows.  But I've already found that what he's

1    already presented to me uncontradicted by any evidence is

2    sufficient so --

3           **MR. LINDSTROM:**  Well, let me say it in a different

4    way.  He also asked for the deposition of anyone that PPCO

5    intends to present --

6           **THE COURT:**  Right.

7           **MR. LINDSTROM:**  -- at the preliminary injunction

8    hearing.  We will agree that anybody we're going to present at

9    the hearing, that person can be deposed.

10          **THE COURT:**  If you're going to present a defense, he

11   gets to prepare against the defense.

12          **MR. LINDSTROM:**  Yeah, right, yeah.  That's something

13   that were willing --

14          **THE COURT:**  No, no.  If you're going to present a

15   defense of Witness A --

16          **MR. LINDSTROM:**  Oh.

17          **THE COURT:**  -- he gets to examine Witness B, C, D and

18   E to defeat your Witness A.  If what you're telling me is, if

19   he can't produce a prima facie case without any witnesses, he

20   shouldn't win.  I mean, that's sort of an appealing argument,

21   from my point of view, but it leaves you stuck because that

22   means if he does present a prima facie case -- which I've

23   already found he did in his TRO -- you're going to get a

24   permanent injunction.  I don't want to put you there and I'm

25   going to allow the discovery.  I'll do an order that does that.

1    Let me do it now.  Why don't you have a seat, take a look at

2    what we do.

3         **MR. GLUCK:**  Your Honor, Warren Gluck on behalf of the

4    liquidators of PPVA.  If I can be heard for just a minute.

5         **THE COURT:**  Yes, sir.

6         **MR. GLUCK:**  I just wanted the record to be clear that

7    with talk about Platinum and its subsidiaries, PPVA, the

8    liquidators of PPVA, as opposed to the acronyms of PPCO and

9    PPLO, have entered into an agreement whereby the TRO, the --

10   has been discharged and we are in discussions regarding this

11   action so two requests.  Obviously there is in terms of PPVA's

12   subsidiaries, in terms of the choice presented by the court,

13   then obviously no ability to bind PPVA's subsidiaries in

14   relation to that choice.  And secondly, PPVA, the liquidators

15   would simply request copies of the discovery produced and the

16   ability to attend any depositions that occur.

17        **MR. SMYSER:**  Your Honor, Mr. Gluck correctly states

18   that we have agreed to dissolve the injunction with respect to

19   PPVAF.

20        **THE COURT:**  I signed that order.  I don't know if

21   it's on the docket or not; I haven't looked.

22        **MR. SMYSER:**  Thank you, your Honor.  I can't remember

23   whether or not I've seen that order.

24        **THE COURT:**  I remember signing it.  Let me open up

25   the docket sheet.

1          Mr. Gluck, do you know if it's been entered?

2          **MR. GLUCK:**  I think it's been entered and I should

3     qualify just in case that was going to be stated.

4          One of PPVA's subsidiaries, to the very best of our

5     knowledge -- which is PPVA Black Elk (Equity) -- remains

6     subject to the injunction and it was not lifted as to that

7     subsidiary.  So to qualify my prior comments in that respect.

8          **THE COURT:**  Okay.  So I have -- the order was entered

9     at ECF-15 that dissolved the temporary restraining order.

10         **MR. SMYSER:**  I see that, your Honor.  Thank you.

11         **THE COURT:**  Okay.  So what does that mean though

12    about -- do you agree then that if it ends up in a broad form

13    injunction that it would not include the PPVA entities against

14    whom the TRO was dissolved?

15         **MR. SMYSER:**  The TRO would not include PPVAF.

16         **THE COURT:**  The preliminary injunction.

17         **MR. SMYSER:**  The preliminary injunction, yes, your

18    Honor.

19         **THE COURT:**  Why don't I do this, Mr. Gluck, to be

20    sure that you have a fair opportunity to object.  I don't think

21    we'll have a problem but if you'll go ahead and go to join dot

22    me, I'll open that up so you can watch what I'm doing.

23         With respect to their ability to obtain documents

24    produced by either side or to attend discovery taken by either

25    side, is there any objection to allowing Mr. Gluck or his firm?

1          **MR. GLUCK:**  Your Honor, there's no objection.

2          **THE COURT:**  I know there's none by you; I want to

3     find out by them.

4          **(Laughter)**

5          Are you-all okay with that?

6          **MR. SMYSER:**  Your Honor, Mr. Gluck is welcome to

7     attend any of the depositions or receive any of the discovery

8     from the point of view of the trustee.

9          **THE COURT:**  Are you in the same position on that,

10    Mr. Lindstrom?

11         **MR. LINDSTROM:**  In general terms, my friends at PPVA

12    are still going to be a defendant in this --

13         **THE COURT:**  Right.

14         **MR. LINDSTROM:**  -- suit so I have no objection to

15    them attend the depositions.  There may be some documents that

16    are produced that I've already actually given to Mr. Smyser

17    that we may not want them to have at that point because they

18    haven't been formally produced but with that small caveat, if

19    there was any problem -- if it's something that we produce

20    (indiscernible) discovery, it's fine.

21         **THE COURT:**  I'm sorry.  So what would you not want

22    them to get?

23         **MR. LINDSTROM:**  When we were discussing coming to an

24    agreement about how to -- dissolve our TRO and reach an

25    agreement to do away with the preliminary injunction, we

1   provided documents to the trustee saying, this is for your eyes

2   only; don't share this with anyone.  I don't anticipate those

3   will be part of the preliminary injunction hearing -- the

4   depositions.  So with that small caveat, if it's something that

5   we're producing in discovery or things we're talking about now,

6   that's fine.  We'll send it to them.

7           **THE COURT:**  Yeah.  I mean, I'm not going to stop

8   people from exchanging documents in furtherance of

9   settlement --

10          **MR. LINDSTROM:**  Right.

11          **THE COURT:**  -- and you don't need to share those with

12  the world but if there's formal discovery, Mr. Gluck is still a

13  party to the proceeding.  You're going to get that stuff,

14  Mr. Gluck.  Does that treat you fairly?

15          **MR. GLUCK:**  It does, thank you, your Honor.

16          **THE COURT:**  Thank you.

17      **(Pause in proceeding from 3:19 p.m. to 3:26 p.m.)**

18          **THE COURT:**  I want to hear objections to both the

19  substance and the form of that order.

20          **MR. SMYSER:**  A couple of comments, your Honor.

21          With respect to "days," I would ask that the court

22  make that two calendar days.  And then with respect to

23  paragraph four, here's my difficulty with that suggestion.

24          There may be a number of other subsidiaries of PPVAF

25  that have received the money.  PPCO and PPLO will know that.

1   We need to know whether or not those entities are entities the

2   trustee needs to sue to try to enjoin them from spending the

3   money and dissipating the assets.  This would not allow us to

4   get that information.

5        **THE COURT:**  I'm not restricting you from asking any

6   questions that you want to ask.

7        **MR. SMYSER:**  No, I'm talking about with respect to

8   the document discovery.  The stipulation, it seems to me, would

9   allow them to escape any obligation to produce the account

10   information which, as I said, they told me themselves in a

11   phone call, was an easy piece of information for them to give

12   us.

13        **THE COURT:**  But this -- let me show you.  I think I

14   know where this confusion is coming from.

15        Here is your Emergency Motion for an Order on

16   Expedited Discovery.  It'll bring it over here in a minute.

17   And all that it sought -- unless I read it wrong ...

18      **(Pause)**

19        ... was where they put the proceeds.  You didn't ask

20   where they ultimately ended up.  So at least when I read this,

21   I took it as the initial deposit account.  If they then took

22   that initial deposit account and made an investment in the

23   subsidiary, I didn't take it that you had asked for that.  So

24   I'm not sure you were getting there anyway.  I don't know that

25   I have any problem with your getting there but it may be that I

1  was thinking differently than what you were thinking you were

2  going to get.  And it may be that the employee wasn't thinking

3  of -- I've never seen accounting records that internally trace

4  proceeds.  If you're looking for a tracing analysis, I don't

5  know.  That's not going to be something that is likely to be

6  quite that easy but --

7          Go ahead.

8          **MR. WAGGONER:**  Your Honor, if I could address the

9  court briefly.

10          **THE COURT:**  Yeah.

11          **MR. WAGGONER:**  We took the request -- if the money

12  goes initially to PPCO or PPLO and then they place that money

13  into a subsidiary's bank account, we regard that as being

14  encompassed by this request.

15          The concern we have with the stipulation, based on

16  Mr. Gluck's comments following the discussion of that option,

17  is that as I appreciate the liquidator's position as that any

18  agreement made by PPCO or PPLO as to the scope of the

19  injunction will not be binding upon subsidiaries of PPVAF, as

20  such, if they provide us a stipulation that we, PPCO and PPLO

21  and our subs only, will be bound by the injunction, if the

22  money went from PPCO or PPLO to a PPVAF sub, we're not going to

23  know about it and so the stipulation doesn't protect us.

24          **THE COURT:**  Let me suggest a different alternative to

25  this.

1          Mr. Gluck, your client is much in the same position

2     as a bankruptcy trustee it seems to me.  So the disclosure of

3     bank balances that he holds or that are in any subsidiary that

4     he controls ought to be information that you could freely

5     share.  Is that fair?  So that we can figure out whether we

6     have a problem here before we open a lot of -- a can of worms

7     that may just be enormously expensive.  I assume that your

8     client wouldn't object to telling the trustee how much cash

9     your client has in his various accounts.  Is that right?

10          **MR. GLUCK:**  Well, let me qualify it in the following

11     sense because I think it's close.

12          As to PPVA, that entity, no provisional relief is

13     being sought, period.  So if it were -- if the monies did go to

14     PPVA's account directly -- and I have no reason to believe it

15     did -- but in any event, is not germane to the provisional

16     relief because no provisional relief is being sought.  It may

17     be germane to some underlying claim but it would not be germane

18     to the provisional relief and therefore not within the scope of

19     expedited discovery, at the very least.

20          We have generally discussed, the liquidating trustee

21     and I, the parameters by which and the timing by which an

22     action in -- the underlying action in respect to PPVA and

23     PPVA's direct subsidiary, Black Elk, PPVA would move forward.

24     So what -- the question is, do they need PPVA's (indiscernible)

25     that entity that's expedited for now or just generally?

1   Probably not because they're not seeking provisional relief.

2         Now, as to PPVA's direct subsidiary -- and this

3   includes, by the way, PPVA Black Elk which is currently a

4   defendant in this matter and currently the subject of a

5   temporary restraining order.  And I don't believe there will be

6   any objection to the provisional restraining order with respect

7   to (indiscernible) Black Elk.  Again, there's no problem.

8         With respect to any other subsidiaries of PPVA, let

9   me -- I begin by stating that as a general rule, the

10  liquidator's investigation of those subsidiaries, the assets

11  they contain in ongoing, I'm not sure that we have, for

12  example, bank records with respect to subsidiaries.  I know we

13  have bank records with respect to PPVA but this is part of a

14  process that in their official capacities -- and liquidators

15  began Thursday of last week.  And so what I would say is the --

16  as far as I know, I don't think we have any subsidiary bank

17  information.  I think we have a right to it -- and this is

18  something I was discussing with the trustee.  Our defense in

19  this case is -- "our," meaning the liquidator of PPVA's defense

20  in this case, assuming it chooses to put one up, is ultimately

21  going to be done with witnesses and documents that are not

22  currently and directly within our control.  I think we have a

23  right to it under Cayman law and know that we will have rights

24  to it under Chapter 15.  Once recognition is granted,

25  recognition is expected -- well, recognition hearing, I should

1   say, is currently scheduled for November 21.  So while I

2   realize that I do put a solution forward, I didn't put forward

3   the status.  And I hope that's at least responsive to

4   Mr. Smyser's points and requests.

5          **THE COURT:**  Let me try one more thing, just see this.

6          **(Pause)**

7          So you'd get the subsidiaries.  You're either going

8   to get tracing or you'll get the subsidiaries he doesn't know

9   about.  They're the ones that -- we don't know yet what you

10  need.  So I still think they probably ought to give you the --

11  you know, maybe you can get the tracing information but it's

12  not relevant if you're going to get the broad form injunction,

13  right?

14         Mr. Gluck, I assume you don't object to that, right?

15         **MR. GLUCK:**  Well, this puts -- see, I think with that

16  language, it's even worse, your Honor, because we don't even --

17  the choice that could be made by PPCO and PPVA and PPLO and

18  PPCO could be to stipulate to enjoin the PPVA subsidiaries

19  without providing the very information that would either clear

20  them or put them in the running for a TRO.  So we could never

21  allow that -- we could never allow a choice by a third party to

22  bind the subsidiaries of PPVA.  Certainly for any -- for any --

23  for there to be an application for any PPVA subsidiary, other

24  than the PPVA Black Elk -- which is already a defendant -- to

25  be enjoined, we would need notice of that and of course all the

1    basis for it, which we obviously don't have now.

2         **MR. WAGGONER:**  Your Honor, I think all of this really

3    counsels in favor of an unconditioned obligation to just

4    produce the discovery because, candidly, if the proceeds went

5    to someone other than, for example, a PPVAF subsidiary, we

6    would need to know who that was even if they're totally

7    unrelated.  And so I think the better course here would simply

8    be to provide the documents that were represented to us to be

9    not that big of a deal to produce in the first place.

10        **(Pause from 3:36:45 to 3:38:13 p.m.)**

11        **MR. GLUCK:**  Your Honor, Warren Gluck here.

12            Just reading this, again, I think the problem here is

13   twofold.  One is that if money went into PPVAF is not relevant

14   to the provisional relief sought -- because there's no

15   provisional relief being sought against PPVAF.

16        **THE COURT:**  I'm going to overrule that objection.

17        **MR. GLUCK:**  And of course --

18        **THE COURT:**  I'm going to overrule that objection

19   because it's relevant to where it might have ended up.  It

20   could have gone through PPVAF and somewhere else.  It's

21   relevant.

22        **MR. GLUCK:**  Okay.  Then the second issue on top of

23   that is that assuming that we could tell from the banking

24   account records of PPVAF where the money came from -- which

25   would mean it would be received from Black Elk -- the question

1    would then be how do you decide a fungible world of money what

2    a portion of that went to any subsidiary.  And to compound

3    that, the notion that the liquidators, with their very limited

4    knowledge could get this done within any sort of expedited time

5    frame, I think it's virtually an impossibility.  But what I can

6    say is I think we've received some account statements

7    concerning PPVA's primary bank.  Whether those statements we'll

8    be reviewing and certainly revealing enough for us to provide a

9    complete accounting is very problematic.  This is exactly why

10   the discussions with the Black Elk trustee has centered around

11   us filing an answer in early February.  With that answer maybe

12   still -- I mean, still (indiscernible) we don't have enough

13   information because we are engaging in a Chapter 15 discovery

14   process to get this information.

15        **THE COURT:**  What if I just leave you-all out of that

16   part of paragraph five, the defendants other than PPVAF?  You

17   should want this, right?  It'll help your trustee figure out

18   what --

19        **MR. GLUCK:**  Yeah, the defendants other than PPVAF.

20   That makes more sense.

21        **THE COURT:**  All right.

22        **MR. WAGGONER:**  Your Honor --

23        **THE COURT:**  Mr. -- go ahead.

24        **MR. WAGGONER:**  I would ask that we end that first

25   sentence of paragraph five after "into any account".

1       (Pause)

2           THE COURT:  Well, no, because that takes away four.

3    I'm going to leave four.  This is to deal with the PPVAF

4    problem.  So if it never touch PPVAF or any of its

5    subsidiaries, then Mr. Lindstrom's stipulation as to everybody

6    else will be broad and cover it all.

7           MR. WAGGONER:  Well then how about it say, "any

8    account of anyone other than PPCO, PPLO or any of its

9    subsidiaries"?  That would cover PPVAF, any of its

10   subsidiaries, or anybody else in the world they might have

11   transferred the funds to.

12          THE COURT:  I think that's fine.

13          MR. GLUCK:  Your Honor, I think we would need to --

14   I'm sorry, this is Warren Gluck.

15          I think PPVAF would need to reserve its right to seek

16   the ultimate destination of the money.  If money did go to a

17   PPVAF subsidiary that is not currently the subject of

18   proceedings, we would need to see if it went somewhere after

19   that.  So we would need some rights to seek that information as

20   well in due course.

21          THE COURT:  We're not taking that away.  That's fine.

22          So this would be which -- into any account other than

23   account of who?

24          MR. SMYSER:  Of PPCO.

25          MR. WAGGONER:  And I guess we need to put the full

1    name, your Honor, and I can read that --

2            **MR. SMYSER:**  "Platinum Partners Credit Opportunity

3    Fund, LLP".

4            **MR. WAGGONER:**  I think it's just "LP".

5            **MR. SMYSER:**  "LP," I'm sorry.  "Platinum Partners

6    Liquid Opportunity Fund, LP".

7            **MR. WAGGONER:**  It's "Opportunities," plural, your

8    Honor.

9        **(Pause)**

10            "Or any of their subsidiaries".

11       **(Pause)**

12       **THE COURT:**  Mr. Lindstrom, does that resolve your

13   concerns?  So you have the right to make a stipulation.  If you

14   don't, you've got to provide all the tracing for everything but

15   if you do make the stipulation, you still have to provide

16   tracing for anything that didn't stay in PPCO or PPLO or its

17   subsidiaries.

18       **MR. GLUCK:**  Your Honor, can we add the words, "to

19   their ultimate destination," at the end of the last sentence of

20   paragraph five?

21       **THE COURT:**  Right.  And if those records exist, they

22   ought to be produced, I agree.

23       **MR. WAGGONER:**  And your Honor, we told you

24   incorrectly on the names of these entities.  It's -- in the

25   Platinum Partners Credit Opportunity, it should be

1   "Opportunities," plural, "Master Fund".  And then the next one

2   is "Platinum Partners Liquid Opportunities Master Fund,"

3   singular.

4           THE COURT:  It's the same.  Okay.  Liquid.  One of

5   them is "Liquid".

6           MR. WAGGONER:  One of them is "Credit Opportunities"

7   and one of them is --

8           THE COURT:  "Liquid".  Got it.

9           MR. WAGGONER:  "Liquid Opportunities".

10          THE COURT:  Okay.  Mr. Lindstrom?

11          MR. LINDSTROM:  Well, on one basis we object because

12  this goes beyond what was asked for in their motion for

13  emergency relief.  We had neither 24 hours to respond to that

14  motion.  If this had been in there, we probably would have

15  asked for additional time to respond to that because I'm not

16  sure how long it would take to provide that kind of accounting,

17  so that issue with my claim.  And I don't know if it's the

18  intention of the court but the way it reads to me is that's --

19  also that's to be provided by tomorrow.

20          THE COURT:  No, that doesn't have to be provided by

21  tomorrow.  You can make a stipulation and then it limits what

22  you have to provide.  You have to provide everything in a

23  reasonable period of time.

24          MR. GLUCK:  Your Honor, I think I have one more.

25          In paragraph four where it says -- paragraph four

1    after the semicolon where it says, "provided," (comma), the

2    stipulation need not," I think it should say, "'may not'

3    include a stipulation with respect to PPVAF or its

4    subsidiaries".  In the event that the ultimate destination of

5    these funds was a PPVAF subsidiaries, given -- we would either

6    fight it or separately stipulate it.  We just can't have any

7    stipulations applying to PPVAF or its subsidiaries.

8              **THE COURT:**  I'm going to go back and look at the

9    motion.

10        **(Pause)**

11             So I think what's become clear from this,

12   Mr. Lindstrom, is that their request turns out to be

13   reasonable.  And their request, thoroughly read -- because it

14   asks for present balances and it says, "all accounts in which

15   any defendant placed proceeds," it's a pretty broad request.  I

16   potentially could simply overrule your objection.  I think

17   you're going to have to do all of this anyway because I do

18   think it's broad enough to cover it but I'm trying to honor the

19   objection by limiting what you might have to do with the

20   stipulation.  I'm going to let you pick.  I'll either overrule

21   it or will do what paragraph four says.

22             **MR. LINDSTROM:**  Well, if those are the choices I'll

23   prefer to keep in paragraph four of those choices.  This is

24   more of a overall broader thing to all the discovery.  The

25   preliminary injunction hearing is currently set November 16th

1  so I guess we need to have some deadlines in there as to when

2  we need to produce all these things.

3      THE COURT:  So I simply require that it be completed

4  cooperatively in an expedited way.  If you want some deadlines,

5  I'll give them to you but I was thinking you'd probably be able

6  to work with counsel better than something I could create here

7  and do some sort of a rolling production.

8      MR. LINDSTROM:  It shouldn't be difficult producing

9  the documents.  That should be -- well, in paragraph four.

10 That shouldn't be -- assuming (indiscernible) that should not

11 be a problem.

12     THE COURT:  Okay.

13     MR. LINDSTROM:  I don't know (indiscernible) time.

14 I'm more talking about the depositions because it's neither

15 thinking about the availability of the witnesses and their

16 lawyers.  I know our schedule is very tied up next week and

17 even the following week so it's going to be --

18     THE COURT:  Look.  I mean, I don't have any problem

19 if you want more time.  I mean, I assume that we could enter a

20 sequential injunction and set you for, then, a further

21 evidentiary hearing at a time that's convenient to you.  So if

22 this is squeezing you on time -- I'm forced -- I said at the

23 last hearing -- and I don't know if you were there -- I'm

24 forcing them to act because I've got concerns about the 14-day

25 limits in Rule 7065.  But if you want more time, you can

1    stipulate to a preliminary injunction hearing without prejudice

2    to your ability to come back and I'll give you a hearing two

3    weeks later or whatever you want.  I mean, I've got time.

4        **MR. LINDSTROM:**  And I appreciate that but I think

5    it's also -- I'm not sure (indiscernible) but it's kind of

6    squeezing them also because I assume they're going to send out

7    a subpoena this afternoon to me and I'll forward it to the

8    witnesses and their lawyers today -- which means they have --

9    the way this written -- till Saturday to file an objection.

10   Which means on (indiscernible) -- I think it was Tuesday -- to

11   have a hearing -- and the hearing would be on Monday -- the

12   quickest they'd have a hearing which means that only leaves,

13   really, Tuesday, Wednesday, Thursday and Friday for

14   depositions, assuming they're even available.  So it kind of

15   puts a squeeze on them also in terms of -- I don't know what

16   their availability is --

17       **THE COURT:**  I agree.  I mean, it's a very tight

18   schedule and I've got a whole (indiscernible) to that schedule.

19   I don't know if they'll (indiscernible) to that schedule so --

20       **MR. LINDSTROM:**  Yeah.  And that's (indiscernible) the

21   things that we might be talking about whenever we held the

22   hearing to figure out how we're going to proceed on this.

23       **THE COURT:**  Yeah but I mean, if you right now tell me

24   you want more time, I'll do that but you're going to have to

25   agree to extend the injunction.

1        **MR. LINDSTROM:**  No, on this one we're not agreeing,

2   your Honor.

3        **THE COURT:**  That's fine.  Then I don't even have a

4   choice but to do it on the schedule, although I agree, I'm

5   creating something very inconvenient for everybody.  I don't

6   know how else to do it, given the requirements of the rules.

7        **MR. WAGGONER:**  Your Honor, in that regard, since we

8   can't compel them to agree to extend the date of the

9   preliminary injunction hearing, we would like a date-certain

10  and some reasonable amount of time in advance of the existing

11  setting by which the documents will be produced, understanding,

12  obviously, that if the schedule gets pushed, then we're going

13  to be amendable to extending out the time for -- or modifying

14  the order to extend the time.

15       **THE COURT:**  In fairness, the second sentence of my

16  order requires cooperation with respect to discovery dates and

17  it's bilateral.  And if people don't comply with that -- this

18  isn't a situation where I've got lawyers that don't know how to

19  conduct business.  I don't know if you-all know the Cooper

20  Scully firm but I've dealt with Mr. Lindstrom for what, three

21  years now, Mr. Lindstrom? -- something like that?

22       **MR. LINDSTROM:**  I believe so or quite that long.

23       **THE COURT:**  Yeah, I mean, I wouldn't expect you to

24  have that kind of a difficulty.  There may be a difficulty

25  beyond that where it just doesn't work -- at which point people

1    are going to have to seek some sort of relief -- but I don't

2    think it's going to be a lack of professionalism by Counsel.

3            **MR. WAGGONER:**  I certainly wouldn't suggest that,

4    your Honor.

5            **THE COURT:**  Yeah, I just mean --

6            **MR. WAGGONER:**  I don't think the issue would be with

7    him as opposed to clients.

8            **THE COURT:**  I just mean I don't know how to put a

9    deadline in.  Let me let you-all meet.  If you-all can't agree

10   on things that bind you, it's not like I haven't given you-all

11   hearings pretty freely.

12           **MR. SMYSER:**  You've been very accommodating, your

13   Honor, with your time and we appreciate that.  And I, too, am a

14   cooperative litigator.  And the only reason I filed this motion

15   is because, as the court -- I've got the emails here where I

16   made this exact request more than a week ago, asking for these

17   documents, asking for these depositions.  And the only reason I

18   came to the court --

19           **THE COURT:**  If any of that came out as a criticism of

20   you, it was not intended to.  I mean, I see the defendants as

21   having -- as you laid out in your motion -- it took them a

22   while to settle on who their lawyer was and that's caused some

23   delays which is going to now cause some inconvenience but it

24   wasn't in any way your responsibility and I did not mean it

25   that way.  I just meant I would prefer something that requires

1   counsel to work together than me picking dates.  And if that

2   doesn't work -- because you can't control Mr. Schmidt or he

3   can't control Platinum, you-all come right on back, at short

4   notice.  But I don't want to -- it's going to be better if the

5   clients will respect their lawyers' agreements and I'm going to

6   let you-all try and make agreements and make your clients agree

7   to it.  See.

8          What else do we need to do today?

9          **MR. WAGGONER:**  I think the second issue, your Honor,

10  is the question --

11         **MR. GLUCK:**  Before we go to second issue -- your

12  Honor, this is -- I just don't want to go back to this.  This

13  is Warren Gluck.

14         I'm disagreeing this one more time in this proposed

15  order and I think -- while I think it's obvious from the

16  context of this hearing and so long as Mr. Smyser does not have

17  a problem with this -- can we add a sentence that says --

18  because it says "defendants," which is fair but can we say that

19  "no subpoenas shall be directed to PPVA" because (a), PPVA is

20  not the subject to liquidation but (b), we frankly don't have

21  the capacity to respond to it.  I guess what I'm saying is the

22  liquidators aren't expecting to be receiving a subpoena.

23         **MR. WAGGONER:**  We don't expect to send a subpoena to

24  PPVAF, your Honor.

25         **THE COURT:**  Thank you.  All right.

1          **MR. WAGGONER:**  Okay, that's fine.

2          **THE COURT:**  Thank you.

3          What are the other issues we have today?

4          **MR. SMYSER:**  The issue goes back to the projected

5     cash disbursements that we've been working on for the last week

6     or so.  We have reached agreement on most of the issues.  We

7     have reach agreement on the total retention payments.  We have

8     reach agreement on the new counsel retainer.  We still have yet

9     to reach an agreement on LC Energy (phonetic), which is a deal

10    funding, and it was on line 65 of the exhibit which we attached

11    to the hearing that we had on this issue last week.  Actually I

12    think it was now Monday.  And we do not have an agreement yet

13    on line 73 which is FNBCT, First National Bank of Central

14    Texas, a requested disbursement of $543,900.  And LC Energy's

15    requested disbursement of $350,000.  Otherwise, your Honor, I

16    think we have agreements.

17         **THE COURT:**  All right.  Mr. Lindstrom, when would you

18    like -- I think we'd set today for your hearing on that.  I

19    don't see your witnesses here so you tell me how you want to

20    proceed on that.

21         **MR. LINDSTROM:**  No.  You know, to be quite candid,

22    your Honor, I think what we provided them is -- would be

23    sufficient to convince them to make these payments.  They did

24    send questions to us which I forwarded along to our client to

25    help me respond to them.  So I'm hopeful we won't even have to

1    have that hearing.  But if I could check with my client and our

2    office and figure out a day and I can give your office a call

3    tomorrow.  And of course I'll talk to Mr. Smyser --

4            **THE COURT:**  That's fine.  Basically, I'm going to let

5    -- we've sort of set out a two-tiered thing -- and again, I

6    know you're fairly new on it -- which is, anything you-all can

7    agree on, I don't think I need to be involved in.  If you-all

8    aren't in agreement on it, you can request an emergency hearing

9    to compel a release of funds.  And I'd given you today to do

10   that and if you want a delay in that, that's fine, just figure

11   out when you want it.

12           **MR. LINDSTROM:**  And if for some reason we can't

13   agree, I'll call his office and say, let's figure out a day

14   that you're available and I'm available and we can come back.

15           **THE COURT:**  That's fine.  We'll make a docket entry

16   that counsel may contact Ms. Dolezel to schedule an emergency

17   hearing with respect to disputes about expenditures and she'll

18   get you in pretty quickly.

19           **MR. SMYSER:**  Thank you, your Honor.  I think that

20   concludes the issues that we have.

21           **MR. LINDSTROM:**  It is.  That's all, your Honor.

22           **MR. SMYSER:**  And I will say, I have a note here.  We

23   did file the State -- so called State-case against the

24   individuals today.  I know people were asking about that so

25   I'll inform the court that we filed that case today.

35

1          **THE COURT:**  You filed it not here; is that right?

2          **MR. SMYSER:**  It is in State Court in Harris County.

3          **THE COURT:**  Okay.

4          **MR. SMYSER:**  Thank you, your Honor.

5          **THE COURT:**  All right.  Thank you.  We are in

6     adjournment.

7          **(Proceeding adjourned at 3:57 p.m.)**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    <u>December 4, 2016</u>

        Signed                                            Dated


*TONI HUDSON, TRANSCRIBER*